Filed 10/21/21  P. v. Rodriguez CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CARLOS RODRIGUEZ,<br><br>    Defendant and Appellant. | B309105<br><br>(Los Angeles County<br>Super. Ct. No. MA044680) |

APPEAL from an order of the Los Angeles Superior Court, Hayden Zacky, Judge.  Affirmed.

Heather J. Manolakas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Carlos Rodriguez (defendant) argues that the trial court erred in denying his petition for resentencing under Penal Code section 1170.95.[1] There was no prejudicial error, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

Just after school let out on a Monday in October 2008, defendant and two others in an SUV drove up alongside three pedestrians on the sidewalk. Someone in the SUV asked the pedestrians, "Where you from?" When one of the pedestrians answered with the name of a street gang, one of the SUV's inhabitants yelled out the name of the rival gang and opened fire at the three pedestrians. One of them was shot and killed. (*People v. Rodriguez*, Mar. 28, 2013, B235978 [nonpub. opn.], at *2-*3.)

### II. Procedural Background

#### A. *Underlying conviction, sentence, and appeal*

The People charged defendant and two other inhabitants of the SUV with (1) the murder of the pedestrian who died (§ 187, subd. (a)), and (2) two counts of attempted premeditated murder of the two other pedestrians (§§ 187, subd. (a), 664). The People further alleged that defendant "personally and intentionally discharged a firearm" (§ 12022.53), that all three offenses were "committed for the benefit of, at the direction of, and in

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

association with a criminal street gang" (§ 186.22, subd. (b)(4)), and that a principal personally and intentionally discharged a firearm (§ 12022.53, subd. (e)(1)).

On the murder count, the jury was instructed on the theories that (1) defendant was the actual killer, and (2) defendant directly aided and abetted the actual killer. The jury convicted defendant of the first degree murder of the pedestrian who died as well as the attempted premeditated murders of the two other pedestrians, and found true the gang enhancement and the discharge of a firearm by a principal; the jury hung on the allegation of defendant's personal discharge of a firearm. The trial court sentenced defendant to 100 years to life in state prison, calculated as a sentence of 50 years to life for the murder (comprised of 25 years to life as the base sentence plus 25 years for the firearm enhancement), plus two consecutive sentences of 25 years to life for each attempted murder (comprised of a base sentence of life plus 25 years for the firearm enhancement). On appeal, we affirmed defendant's convictions and sentence.

**B.** *Petition for resentencing*

In August 2020, defendant filed a form petition to vacate his first degree murder conviction under section 1170.95. Without appointing counsel or entertaining further briefing, the trial court summarily denied defendant's petition, reasoning that defendant had "failed to make a prima facie case for relief pursuant to . . . section 1170.95" because the jury was never instructed on—and hence his conviction did not rest on— either of the two theories invalidated by section 1170.95.

Defendant filed this timely appeal.

3

## DISCUSSION

Defendant argues that the trial court erred in summarily denying his section 1170.95 petition. Because our consideration of this argument involves questions of law and the application of that law to undisputed facts, our review is de novo. (*Tsasu LLC v. U.S Bank Trust, N.A.* (2021) 62 Cal.App.5th 704, 715.)

A person is entitled to relief under section 1170.95 if, as relevant here, (1) "[a] complaint, information, or indictment was filed against [him] that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine," (2) he "was convicted of . . . second degree murder," and (3) he "could not be convicted of . . . second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).) In January 2019, our Legislature amended section 188 to provide that "in order to be convicted of murder, a principal in a crime shall act with malice aforethought" and that "[m]alice shall not be imputed to a person based solely on his . . . participation in a crime." (§ 188, subd. (a)(3).) Our Legislature's purpose was to ensure that "[a] person's culpability for murder [is] premised upon that person's own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 1(g).)

As a threshold matter, we conclude that the trial court erred in summarily denying defendant's petition. In *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), our Supreme Court held that if a defendant files a facially compliant petition and requests the appointment of counsel, the trial court must appoint counsel and entertain further briefing regardless of whether the record of conviction unequivocally demonstrates that the defendant is not entitled to relief. (*Id.* at p. 964.) Here, defendant's petition was

4

facially compliant and he requested counsel.  Thus, *Lewis* dictates the conclusion that the trial court erred in summarily denying defendant's petition.

However, this finding of error is the first step, not the last. That is because *Lewis* went on to hold that an error in summarily denying a section 1170.95 petition is harmless unless the defendant can show ""'it is reasonably probable that if [he or she] had been afforded assistance of counsel [and briefing] his [or her] petition would not have been summarily denied without an evidentiary hearing.'"" (*Lewis*, *supra*, 11 Cal.5th at p. 974.)

We conclude that defendant was not prejudiced by the summary denial in this case because the record forecloses defendant's entitlement to relief under section 1170.95 as a matter of law, such that the appointment of counsel and further briefing would not have mattered.  In assessing whether a defendant seeking relief under section 1170.95 has made out a prima facie case warranting an evidentiary hearing, a trial court must take the petition's factual allegations as true and ask "'whether the petitioner would be entitled to relief if [those] allegations were proved.'" (*Lewis*, *supra*, 11 Cal.5th at p. 971.) "'However, if the record, including the court's own documents [from the record of conviction] "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Ibid.*)

Defendant has not made the requisite prima facie showing of entitlement to relief under section 1170.95.  That is because the jury instructions establish that the defendant's murder conviction rests on the theory *either* that defendant was the actual shooter *or* that defendant aided and abetted the actual

shooter in the murder. Either way, the jury had to find that defendant personally acted with malice. Because the jury was never instructed on a natural and probable consequences theory or felony-murder theory, his murder conviction could not rest on either theory and he is not entitled to relief under section 1170.95 as a matter of law. (E.g., *People v. Smith* (2020) 49 Cal.App.5th 85, 92, fn. 5, review granted July 22, 2020, S262835.)

Defendant offers two reasons why he was prejudiced by the trial court's summary denial of his section 1170.95 petition.

First, he argues the natural and probable consequences theory *was* before his jury. Specifically, he notes that the jury instruction on direct aiding and abetting (CALCRIM No. 401) states that a "person may . . . be found guilty of other crimes that occurred during the commission" of a crime he "aid[ed] and abet[ted]" "[u]nder some specific circumstances," and argues that the prosecutor "seemed to" argue the natural and probable consequences theory in closing by stating that "when you join a gang . . . when you commit a crime, even if you don't want to, the other one is required to back him up, no matter what." We reject this argument, as it rests on a misreading of the record. It is undisputed that the jury was not given the standard instruction for natural and probable consequences liability (CALCRIM No. 403), and that the jury was accordingly not ever instructed on which lesser offense the defendant had to aid and abet before the natural and probable consequences liability attached. Further, neither the snippet of the standard direct aiding and abetting instruction defendant cites nor the snippet of closing argument put the natural and probable consequences theory before the jury: The snippet of the jury instruction was superfluous because the jury was never instructed that there was a "first crime" or a

6

second crime, and the snippet of the closing argument was directed toward why defendant harbored the intent to kill necessary to find him guilty as a direct aider and abettor. Neither injected a wholly new and separate theory into the trial.

Second, defendant makes a number of arguments directed at the validity of his attempted premeditated murder convictions, but these are irrelevant because he did not challenge them in his section 1170.95 petition. They are therefore outside the scope of this appeal.

## DISPOSITION

We affirm the order denying relief under section 1170.95. <u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
HOFFSTADT

We concur:

_____, P. J.
LUI

_____, J.
ASHMANN-GERST

7